Good morning, Your Honors. I'm Hillary Walsh. I'm here for Petitioner. I'd like to request or reserve five minutes for rebuttal, please. Counsel, please be reminded that the time shown on the clock is your total time remaining. Yes, ma'am. Thank you. We've been at this for 11 years. This is an asylum case that's been litigated for 11 years. We've got a robust record before the court, but I have good news for you. This case can be disposed of by resolving one single question, and that is, what is the meaning of the word all? I say this because the applicable rule here is that, and this is from Kalubi, this is when the court was sitting en banc, this is in 2004 when this court articulated this rule, that the board abuses its discretion when it fails to consider all relevant factors in deciding discretion. And so the court has to ask, or ask itself and to resolve, what does all mean? Does it mean, as the government suggests, that all relevant evidence is whatever the board puts in its opinion? Is all the relevant evidence that's necessary for determining discretion? Or is it what all means in a practical sense, and what all means when this court was sitting en banc in Kalubi, which is that if a single factor is missing from the board's analysis, remand is necessary? Factor or fact. That makes a huge difference. A factor may not be missed, but a fact isn't necessarily required to be specifically discussed. And so, specifically, I want to ask you on the facts of this case. What relevant evidence do you say was not considered in the determination? Yes, Your Honor. And I will even go farther to say it's not my position what were relevant factors or facts that weren't considered. We can simply look to the I.J.'s most recent decision, the third I.J. decision affirming relief. And I presented it to the extent it might be handy. But the B.I.A. decision is really the governing decision. So the fact that an I.J. may disagree with what the B.I.A. decides does not make you prevail. I understand, Your Honor. We can also look to B.I.A. opinions to see what factors are supposed to be considered. But I want to get directly to your question when you're saying, what are the factors that weren't considered? And those are three main factors. Let me get my notes here. First, age at entry and length of residence. Neither of those factors were considered in this opinion. Okay, so were those issues raised? Yes, Your Honor. Age at entry and what was the other one? Length of residence. And length of residence. And so you are aware that everything doesn't have to be discussed to be considered, correct? Yes, Your Honor. Okay. And, you know, the court, I think that's really an important thing for this court to resolve because that's where we're going to go. Is, does the court have to give a recitation of every single factor that's considered? And that would be, frankly, it's untenable. And we would be up and down all over again, kind of like we've already been with this case. And this court has already instructed on how to handle this. And the board is super familiar with how to handle addressing all factors considered because it has to do so under Cole v. Holder, which government counsel actually cited in its brief, where the board is required to address all evidence related to future torture. So it's already used to providing reasoned analysis on what is and isn't considered. The board does this every single day. And it doesn't just do this in the context of asylum discretion. It does it constantly in the context of when you apply for a green card in immigration court, an adjustment of status, and discretion is a factor there, too. But counsel, I'm sure we have also precedent that says unless there is a reason to believe otherwise, we presume that the BIA considered all the facts. A simple conclusion like that is not sufficient under Colubi. And here's why, Your Honor. Well, okay. Let's just go back to these. So you're saying age, entry, and length of? Age at entry and length of residence. Age at entry? Age at entry. Age at entry. So he was what when he entered last time? He was, like, 15 years old. No, when he entered the last time when he lied. When he made the alleged misrepresentation. I'm sorry. My bad. Fair enough. I don't want to be disrespectful, but I think he was 26, something like that. So how does age help you? But that's different because he's been a lawful permanent resident this whole time. The Court's never taken into consideration his age at the most recent entry. Why is that relevant? Why is the age at the initial entry relevant evidence for this particular scenario? Because this is a kid who grew up in a refugee camp in Pakistan and came to the United States in 2002. When he started the process for immigrating here, he was 9 years old, and it took until he was 15 to get here. That's all in the record. Yes, ma'am, it is all in the record. That was all before the board. But the focus was on, I'm sorry, none of that was what? None of that was addressed in its analysis on the positive factors. Not a single word of that was addressed. The difficulty here is that at the time that the board was focusing on, he was an adult. And so I'm not sure that I'm persuaded that the board had to focus on an earlier time when considering what happened in this most recent entry. Kaloubi and the court in all of its cases has never distinguished between what factors, when we have a set of factors, Kaloubi actually cites, and I think it's footnote 3, Kaloubi cites to a Seventh Circuit court case that has a recitation of what factors the board commonly considers in determining discretion cases. So these are factors that are out there. This isn't like we're pulling things out of thin air. This is factors that the board consistently applies. And age and length of residence in the United States is one of those. And I really want to get to what I think is more important. Can I, I mean, the difficulty with your argument seems to me the dissent, the BIA dissenting member brought up some of these things. So it's a little hard for, this is an unusual case. It is. It's rare that we see three immigration judges all affirmatively saying that asylum relief should be granted as a matter of discretion and two BIA reversals and remands and then it comes back a third time. With a case like this, I think the presumption holds even stronger that the board considered all of these relevant factors because of that lengthy history that it had. And you have a dissenter mentioning some of this stuff. So it's a little hard to believe that the BIA didn't consider the positive factors. I guess your argument seems to me more that they needed to give a more reasoned explanation behind the positive factors. Yes, Your Honor. And respectfully, I think that when we have to reasonably conclude or wonder, if this court even has an indication of wonder of whether the board considered it or not, it's not been a well-reasoned opinion and cannot stand under Kaluby. But we presume that the board considered all the relevant evidence. And as Judge Sanchez said, if there is a dissent that points that out, the majority has read the dissent. And so that presumption is even stronger. So you have an uphill battle to persuade us that the presumption should be rebutted in this case. I think Kaluby really, Kaluby is a more recent case and it was an en banc decision, so it's a more recent case than the, I think it's Lopez that you're citing, Your Honor. And that's a 2004 case and I think the other one's in the 90s. So if we disagree with you and decide that Kaluby does not compel what you are suggesting to us, then do you lose? Yes, Your Honor, we do. May I ask this? I mean, the thing that I thought was a little bit of a closer question is that the board has its precedent in matter of Pula and others that talk about or set forth a standard that when you have this serious risk of future harm, you can't, let me see if I come up, you know, the danger of future persecution will outweigh all but the most egregious adverse factors. Could the board have not applied or erred by not applying its precedent in considering or discussing matter of Pula and I think it got repeated in Kasinga as well. Yes, Your Honor, we don't know what or how. I mean, its own precedent wasn't even, the Pula and these other cases weren't even cited in the decision but we don't know why are these convictions the most egregious factors. The board clearly wants to give them full weight. It gets two sentences explaining why that it needs to give them full weight and it felt like the IJA hadn't done so. But I absolutely agree that the board failed to apply its own precedent and then especially when we look into the context of where this court has applied the board's decisions, it fails. Counsel, considering Pula though, do we also consider the fact that he would never be sent back to Afghanistan? Never doesn't mean never. Okay. So withholding, just like all here, apparently if we take the government's position doesn't necessarily mean all. Fair, okay. And I do not, I remember all of us were probably around the same age in the 90s when Bill Clinton was wondering what the word is meant. I do remember that. And this is a little bit of that throwback where what does all mean? When we look at Kaloubi, I want to draw the court's attention to recency of criminal conduct. Well, you never explained why he would never be, why he was. Oh, withholding of removal and convention against torture. The government can move to reopen those cases at any time and can try to argue that country conditions have changed. So this isn't. And then you would have recourse at that point though. We would have this all over again, Your Honor. We would. And there is a sense of finality when we can have a reasoned decision if the court had, if the board had actually considered all factors and one that I really want to draw the court's attention to is the recency of criminal conduct. The board specifically states, and this is where I think we have winner, winner, chicken dinner. When the board specifically states he has a long and lengthy criminal history starting in 2007, it doesn't make any observations related to the positive factor that the last criminal conduct act was in 2013. And this case was before the board in 2020. Here we are, Your Honors, in 2025 and in 2023 he had to pass his background checks. And so it's an inference that he's not got anything new on his criminal record. And that is a positive factor that every single board decision is required to consider and the board didn't do it here. And this isn't just a fact. It is a factor because it helps us see the dangerousness and the egregiousness of the conduct. And that goes again to Your Honor Sanchez. Counsel, would you point me to the language in Kalupi that you think is winning language for you? Yes, ma'am. It is a couple, it's a one sentence. What page are you on? I don't have that written down, but I have the quote. So I'll have to, maybe we can do a control find. But the sentence starts with, we have consistently, if that helps, Your Honor. I apologize. Go ahead and read the sentence. I'll find it. Yes, ma'am. We have consistently required the BIA to state its reasons and show proper consideration of all factors when weighing equities and denying relief. It's at 1140. Thank you, Your Honor. That's a very, yep, I'm looking at it. That's a very general statement. And so how are you thinking that that compels us to rule in your favor? In Kalupi, the underlying court found, or the underlying board, I should say, found that he was denied relief. Right? He was denied on discretion. There was one single factor that the board had not addressed. And the Ninth Circuit, en banc, remanded for reconsideration of one factor. And that's what I asked for the court to do here, where recency of criminal conduct, I filed a 28J letter yesterday. I'm so sorry it was so late. But of a multitude of unpublished BIA decisions, all considering recency of criminal conduct in their decisions. The problem with your argument, I think that the context of Kalupi was an adverse credibility determination, which is pivotal in the cases. And this is a discretionary decision with multiple factors to be considered. I want to contextualize this, Your Honor. Okay. And the reason being, they denied on discretion, solely on discretion, because they had not been able to find an adverse credibility. They had not been able to enter adverse credibility on the merits of the case itself. Specifically, the court goes on to say in the conclusion of Kalupi, it says, you may not like the batting record. Right? And that's because you couldn't enter an adverse credibility finding. So you brought it over here and used these statements against him. And then there was a second, there was a second, I guess, part two in the decision that talked about the factors that were or were not considered. And that's where these, you know, it may be a general statement that I'm bringing to Your Honor, but that case is on point. But, Counsel, you're not reading the next sentence immediately after that. This means that the BIA must explain what factors it has considered or relied upon sufficiently that we are able to discern that it is considered and decided. It doesn't, they're not interpreting and saying you must recite every factor, you know, presented. It's saying which factors did the BIA rely on. That's all they have to say. There's no, none of this, like, tick mark, check mark requirement which you seem to suggest. No, Your Honor. What I would suggest is that there is no question that the Board considered as a negative factor the lengthy and extensive criminal history, the Board's words, substantial criminal history starting in 2007, and did not consider the positive factor of no criminal history from 2013 to 2020. And that is a factor that the Board considers every single time it weighs the criminal conduct in front of it. And that factor is not included. I'm over time, Your Honor. Well, you're not. You have 12 seconds left. But we'll give you a couple minutes for a rebuttal. I think that's supposed to include my rebuttal, so I apologize. Thank you. Any questions? All right. Thank you, Counsel. We'll hear from the Government. Good morning, Your Honors. May it please the Court? Sana Lee representing the Attorney General. Your Honors, in this case, the Board's decision listed what it believed were the most relevant factors. And there's no proof in the record that it disregarded relevant factors. In fact, in Kaloubi, the Court said that the Board has discretion to determine the relevance of the factors and the weight to place on those relevant factors. And here, the Board did not abuse its discretion. The petitioner has to point out or show that the Board's decision was arbitrary or irrational or contrary to law. And here, he has clearly not done that. The Board reasonably discussed what it believed were the most negative and positive factors. But there's no proof in the record or no showing that the Board ignored something that was relevant. And in Sionzi, I don't know how to pronounce that, S-Z-O-N-Y-I, a Ninth Circuit case, the Court stated that the Court generally presumes that the BIA thoroughly considers all relevant evidence in the record. And here, that's what the Board did. So could you address the concern that I raised with your opposing counsel about whether the Board ignored matter of Pula and Kasinga, the notion that when you have this risk of future harm, all but the most egregious adverse factors, that it'll outweigh all but the most egregious adverse factors. Is there, you know, sometimes we discuss that the Board acts arbitrarily if it ignores its own prior precedent. Did that happen here? No, Your Honor. It did not ignore Pula. In fact, it did mention that the IJ considered a risk of persecution because, you know, the IJ did grant withholding. But it doesn't, you know, obviously it looked at a risk of persecution, but it didn't cite the Pula standard of you have to have some really egregious factors to overcome this risk of future persecution. It didn't apply it. And there may be answers to it, and you may come up with them, but that's not the same thing as noting that there's a risk of future persecution in my mind. Well, I think in this case, Your Honors, as we have argued in our brief, that there is no risk of future persecution. Because of withholding? Right. Because of the grant of withholding of removal to Afghanistan or from Afghanistan. He also has protection under the Convention Against Torture. And so... And what about what counsel raised, you know, that the government could reopen to readjust the granting of withholding of removal for certain factors? I mean, I was looking at that  One of the factors under the regulation is if there's a reasonable grounds to believe the alien is a danger to the security of the United States. So there is, I suppose, a possibility that the government could reassess whether it should vacate withholding and potentially send him back to Afghanistan? Or is that remote in your mind? Well, Your Honor, I have not heard anything from the Department of Homeland Security about any sort of anything like that in this particular case, although I can't predict what they will do in the  As far as I'm concerned in this case, if the government does that, Petitioner will get the process. He would have to have... I mean, I would hope so. Yes, Your Honor. The regulation states that he would have to receive notice and procedures before the Immigration Court if the Department of Homeland Security were to decide to send him back to Afghanistan. But in this case, that, you know, that is not, I think, relevant to the issue, the main issue as far as whether the Board abused its discretion in looking at the factors in that record. But I hope I answered your... I mean, to some extent. I take the point. I mean, I think the Board obviously weighed the evidence in a different way than the IJs had. But it doesn't mention the PULA standard and wrestle with it in a sense and explain why it's unnecessary here because we've granted withholding of removal and cap relief. And so it raises a question, at least for me, whether there might be an abuse of discretion with the Board not engaging with that legal standard that it has put upon, you know, for itself. Even if there might be an answer to it, you know, through the withholding relief or otherwise. And so I think that's the concern that comes up for me is just the absence of any discussion of that in the decision. Your Honor, we would respectfully argue that the Board did not abuse its discretion by not fully discussing all of that factor. But I think because the Board knew that Petitioner has withholding, you know, the Board reaffirmed the immigration judge's grant of withholding and cap, so the Board was well aware that he cannot be sent back to Afghanistan. And I think the Board actually, on remand, prompted the IJs to consider withholding these other claims as well. Right. And in its second decision, the Board ordered to the immigration judge to specifically address withholding of removal and cap protection. And so the Board is definitely aware that he has protection from being sent back to Afghanistan. And, you know, the Board did consider that, the IJ considered the risk of, the possibility of  But in this case, and under the case law, the Ninth Circuit has said there is no risk of persecution when a Petitioner has been granted withholding of removal and or cap protection. And so just going back to the Board's consideration of the relevant factors, the Board listed the relevant factors, which were his lengthy and substantial criminal history. So he has at least four convictions and an additional drug offense. So starting in 2007, every few years, he has a different offense. Ms. Lee, I guess, so what do you, because I think we're all familiar with his record, what do you, how would you respond to counsel's point that if it's raising this lengthy and substantial history, it should have done more to discuss the positive factors that no conviction since 2013 and that those positive factors to counterbalance against what it did raise. Your Honor, the Board has discretion to determine what are the relevant factors. So in this case, the Board is aware of the criminal history as it laid it out, but it wasn't persuaded that the last conviction was in 2015 because the seriousness of the convictions outweighed the positive factors. And so as your Honors have stated, the Board does not need to recite every specific single fact in this case. The Court presumes that the Board considers all the relevant factors. And so the fact that the last conviction was in 2015, it wasn't, it did not outweigh any positive, I'm sorry, it didn't outweigh the whole negative history. So the Board did consider what it believes to be the relevant factors and laid them out in its decision, and it was not required to mention his age at the time. And I think in this case, it wasn't that relevant where he did reenter at age 26. And at that point, as an adult, he lied to customs and border officials about the identity of his true mother, his biological mother. And in addition, he also has the conviction for violating the protective order, which is based on his former partner's statements that he pushed her and he threatened her, which is a serious conviction. And the DUI conviction where it was based on alcohol and drugs and he was driving 60 miles per hour at that time. He has a federal felony conviction for accessory after the fact, relying to immigration officials. And the Board properly considered the family in the United States, which is Petitioner's brother. And the Board mentioned that the brother did assist the United States. The Board mentioned the drug treatment program, which he was ordered to do by the court. The Petitioner finished it. The courts have also ordered him to pay fees and fines, the criminal courts. And he did that as required. The Board mentioned these positive factors, but it was not persuaded that these positive factors outweighed the negative factors, which was his criminal history. And the Board has wide discretion to determine what is appropriate. And the Board did not abuse its discretion. If you have any other questions? It appears not. Thank you, Counsel. Thank you, Your Honor. Let's have a minute for rebuttal. Two points, Your Honors. Counsel stated that the Board knew he had withholding, and so they didn't need to talk to him   about it. The Board specifically weighed as a positive factor that he faced a danger if he were to be removed. This is by contrast into cases like Kaloubi, like the other two cases that the Government has cited, where the board specifically says, hey, we're going to deny asylum on discretion because you have withholding of removal on CAT, and so you don't face a risk of  But that's not what the Board did here. I know that's what the Government wishes that it had done, but that's not what the Board did here. The Board still considered the risk of harm as a positive factor, but did not go on to say why this criminal history is so egregious that compared to the risk of harm, which frankly is almost certain, it's definitely over 51%, why are these criminal history factors, why is it so egregious? The Board didn't say that, and Pula requires it. And then the second point, if I can have just a moment, is that Counsel says the Board wasn't persuaded that his last conviction was in 2013 was relevant. I would love to see that in the decision, but Counsel says that, but it's not here. Why make this assertion if this fact doesn't matter, if this fact or weren't of relevance? And we don't have to wonder what the Board considers to be  The Federal Rules of Evidence tells us what is relevant. The Board doesn't just get to willy-nilly decide what it is. It's a very low standard. Please remand. This man deserves a fair, full, articulated decision on this very important issue of discretion on asylum. All right. Thank you, Counsel. Thank you. Thank you to both Counsel for your helpful arguments. The case just argued is submitted for decision by the Court. The next case on calendar for argument is Solomon v. LVMPD.
judges: RAWLINSON, BUMATAY, SANCHEZ